UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WANDA MAGNESS, | ) | NO. EDCV 05-00396-MAN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on May 11, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income ("SSI"). On June 10, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on January 26, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits, or, alternatively, an order remanding the case to the Commissioner for further consideration; and Defendant requests that the Commissioner's decision be affirmed.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on October 18, 2001. (Administrative Record ("A.R.") 57-61.) Plaintiff claims to have been disabled since December 26, 1999, due to neck and back pain, headaches, and muscle spasms. (A.R. 57, 71, 92.) Plaintiff has past relevant work experience as a sales account executive for television, various construction companies, and the yellow pages. (A.R. 19.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On November 19, 2003, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 231-60.) In a December 16, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 18-23, 5-8.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his December 16, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 26, 2000. (A.R. 22.) He found that Plaintiff's impairments, consisting of cervical spine musculoligamentous sprain and strain, were "severe," but she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)

2

1    In describing Plaintiff's residual functional capacity, the ALJ
2  found that Plaintiff "has the residual functional capacity for
3  essentially a full range of light work activities as assessed by the
4  State Agency [Physician] at Exhibit 8F."[1] (A.R. 23.)  The ALJ found that
5  Plaintiff's allegations regarding her limitations "are not totally
6  credible for the reasons set forth in the body of the decision."  (*Id.*)

7

8    The ALJ further found that Plaintiff's past relevant work as a
9  sales account executive for television, construction companies, and the
10 yellow pages did not require the performance of work-related activities
11 precluded by her residual functional capacity.  (*Id.*)  Thus, the ALJ
12 concluded that Plaintiff was not disabled.  (*Id.*)

13

14                       **STANDARD OF REVIEW**

15

16    This Court reviews the Commissioner's decision to determine
17 whether it is free from legal error and supported by substantial
18 evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
19 Commissioner's decision must stand if it is supported by substantial
20 evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>,
21 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
22 mere scintilla but less than a preponderance -- it is such relevant
23 evidence that a reasonable mind might accept as adequate to support the
24 conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

25

26

27      [1]   "Light work" involves "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10
28 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

3

1    Although this Court cannot substitute its discretion for that of

2    the Commissioner, this Court nonetheless must review the record as a

3    whole, "weighing both the evidence that supports and the evidence that

4    detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary</u>

5    <u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*

6    <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

7    responsible for determining credibility, resolving conflicts in medical

8    testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d

9    1035, 1039-40 (9th Cir. 1995).   This Court must uphold the

10   Commissioner's decision if it is supported by substantial evidence and

11   free from legal error, even when the record reasonably supports more

12   than one rational interpretation of the evidence. *Id*. at 1041; *see also*

13   <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d

14   595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th

15   Cir. 1995).

16

17                              **DISCUSSION**

18

19    Plaintiff alleges one disputed issue:  she contends that, in

20   assessing her residual functional capacity, the ALJ failed to consider

21   properly the opinions of Dr. David Doty, her treating physician; Dr.

22   Bunsri Sophon, an examining physician; and Dr. Salvatore Stella, a state

23   agency physician.   (Joint Stip. at 4.)

24   ///

25   ///

26   ///

27   ///

28   ///

                                    4

A.  **The ALJ Failed To Consider Properly The Medical Evidence Of Record In Determining Plaintiff's Residual Functional Capacity.**

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."   Social Security Ruling 96-8p.   According to 20 C.F.R. §§ 404,1545(a), 416.945(a):

> We will assess your residual functional capacity based upon **all** of the relevant evidence. . . .   We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. . . .   We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

(Emphasis added; citations omitted).   "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s)."   20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

In determining Plaintiff's residual functional capacity, the ALJ explained:

> I have carefully considered the medical evidence and

5

find that [Plaintiff] is under a severe impairment from cervical spine musculoligamentous sprain and strain. The impairment does not meet or equal Listing level severity and leaves [Plaintiff] with the residual functional capacity for essentially a full range of light work as assessed by the State Agency review physicians at Exhibit 8F.

. . . .

. . . The finding that [Plaintiff] is able to do a full range of light work activities affords [Plaintiff] every benefit of the doubt and is consistent with the recommendations and examinations of the consultative examiners, Dr. Thale, Dr. Doty, and the State Agency Review physicians.

(A.R. 19, 22.)

1.   **The ALJ Failed To Consider Properly The Opinion Of Plaintiff's Treating Physician, Dr. Doty, In Assessing Her Residual Functional Capacity.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p; *see also* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference). When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence

6

in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

In discussing Dr. Doty's records, the ALJ stated:

In the course of a worker's compensation case [Plaintiff] was referred by her attorney to Arrowback Medical Group for an initial orthopedic evaluation on June 5, 2001. In a report addressed to [Plaintiff's] attorney, David H. Doty, M.D., [diagnosed Plaintiff] with cervical strain/sprain and pronounced [her] temporarily and totally disabled (Exhibit 16F, pp. 1-8).  This determination was made after completing an examination that revealed that [Plaintiff] had grossly normal range of motion for all body parts except minor limitations to the cervical spine.  Id.  In a subsequent examination on [June 25, 2002], Dr. Doty issued a permanent and stationary report (Exhibit 13F, pp.1-7).  This report was also addressed to [Plaintiff's] workers' compensation attorney.  Dr. Doty diagnosed [Plaintiff] with cervical strain/sprain and felt that [Plaintiff] should be prophylactically precluded from doing heavy work as well as from prolonged upward and downward gaze and repetitive forceful gripping and grasping bilaterally.  Dr. Doty did not

recommend surgery at the current time but felt it should be left as an option in the unforeseen future as one method of treatment.  It should be noted that the examination results in the permanent and stationary report were almost identical to those in the initial examination where [Plaintiff] was pronounced temporarily and totally disabled.  Id.

(A.R. 20.)

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Doty's opinion that she is precluded from performing work involving prolonged upward and downward gaze and repetitive forceful gripping and grasping, bilaterally. (Joint Stip. at 7.)  While Plaintiff concedes that Dr. Doty's preclusion from performing "heavy work," under the worker's compensation guidelines, is consistent with the ALJ's finding that Plaintiff can perform "light" work, she maintains that the neck and manipulative limitations assessed by Dr. Doty "are significant non-exertional limitations that are not consistent with a finding of a full range of  light work." (Joint Stip. at 8.)

The definition of "light" work states that, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*"  20 C.F.R. §§ 404.1567(b), 416.967(b)(Emphasis added).

8

Examples of non-exertional limitations that preclude a claimant from being able to perform the full range of "light" work include limitations on manipulative and handling functions and postural limitations, thereby encompassing Plaintiff's manipulative and neck limitations as found by Dr. Doty.[2]   20 C.F.R. §§ 404.1569a(c),416.969a(c)(examples of non-exertional limitations include difficulty "performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."); Social Security Ruling 85-15, *2 (non-exertional limitations include: "abilities to reach"; abilities "to seize, hold, grasp, or turn an object (handle)"; and limitations involving "fine movements of small objects requiring the use of fingers to pick, pinch, etc.")  It therefore was not proper for the ALJ to conclude that the neck and hand limitations found by Dr. Doty were "consistent" with a residual functional capacity finding that Plaintiff can perform the full range of "light" work. *Cf.*, <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ did not improperly reject treating doctor's opinion, because it was consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work").

Furthermore, Dr. Doty rendered his June 25, 2002 opinion following a series of treatments undertaken by Plaintiff based on his

---

[2]   Dr. Doty's non-exertional limitations of prolonged upward and downward gaze and repetitive forceful gripping and grasping, bilaterally, fall within the postural and manipulative limitations found in 20 C.F.R. §§ 404.1569a(c),416.969a(c), even though they are not specifically listed as examples.  Defendant's argument -- that these limitations are "only a narrow subset of the full [range] of non-exertional work activities" and do not rise to the level of a non-exertional limitation that should be included in Plaintiff's residual functional capacity -- is therefore unpersuasive.  (Joint Stip. at 13.)

recommendations (including physical therapy, traction, and chiropractic adjustments).   His   opinion   regarding   the   extent   of   Plaintiff's "permanent and stationary" impairments and attendant limitations was based on his examinations of Plaintiff and objective findings.   He concluded that her condition was not subject to improvement, as none of his recommended treatments provided her any relief.[3]   To the extent the ALJ vaguely noted the similarity of Dr. Doty's reports after summarizing the limitations that Dr. Doty found in his June 25, 2002 report, that observation does not constitute a specific and legitimate reason for rejecting the non-exertional limitations found in Dr. Doty's June 25, 2002 report.   *See also* <u>McAllister</u>, 888 F.2d at 602.   Accordingly, the ALJ's rejection of Dr. Doty's additional non-exertional limitations constitutes error.

---

[3]   In his July 12, 2001 opinion, Dr. Doty explained that he declined to find that Plaintiff had reached a "permanent and stationary" status, stating:

. . . It is [my] opinion that [Plaintiff] is [in] need of further treatment in the form of a trial of chiropractic care, and failing improvement with that, cervical epidural steroid injections can be considered.   Should all of these conservative measures fail, [Plaintiff] would be a candidate for a single level fusion at C4-5.

(A.R. 201.)   In his June 25, 2002 report, Dr. Doty further explained his reasons for finding that Plaintiff had reached "permanent and stationary" status, stating:

[Plaintiff] has received physical therapy, traction and chiropractic adjustments, without relief.   Although surgery at C4-5 has been recommended, [Plaintiff] does not wish to proceed with such at this time.   This is certainly reasonable; however, in the absence of operative intervention, I have no further treatment recommendations to make.   Therefore, I do believe [Plaintiff] has reached maximum medical improvement with modalities available and she can be declared permanent and stationary[.]

(A.R. 181.)

10

2. **The ALJ Improperly Characterized And Rejected The Non-Exertional Limitations Provided By The Examining And State Agency Physicians.**

The opinions of examining physicians and non-examining medical experts may constitute substantial evidence upon which an ALJ may rely when they are properly supported. *See* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002)("The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").   The opinion of an examining physician generally should be accorded more weight than that of a non-examining physician. Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).   An ALJ must provide specific and legitimate reasons for rejecting the contradicted opinion of an examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

In discussing the March 25, 2002 report of Dr. Sophon, an orthopedic surgeon who examined Plaintiff at the request of the Commissioner, the ALJ stated:

[Plaintiff] underwent a complete orthopedic consultative examination that was conducted by Bunsri T. Sophon, M.D.,

11

Diplomate, American Board of Orthopedic Surgeons, on March 25, 2002 (Exhibit 7F, pp. 1-6). [Plaintiff] reported the onset of neck pain in December 1999 after lifting a package of phone books.  She had received conservative treatment consisting of physical therapy, pain medication and chiropractic treatments.  [Plaintiff] had full range of motion [of] her lower extremities and except for some limitations with range of motion of the neck[,] she had normal range of motion for her upper extremities.  Her vital signs, gait and mobility were normal.  [Plaintiff] did not use assistive devices to ambulate and was able to get on and off of the examining table without difficulty.  After completing the examination Dr. Sophon diagnosed [Plaintiff] with cervical spine strain/sprain.  He felt that [Plaintiff] had the ability to do essentially a full range of medium work.  <u>Id.</u>

(A.R. 21.)

Plaintiff contends that the ALJ erred in his characterization of Dr. Sophon's opinion, in which Dr. Sophon stated that Plaintiff was limited to occasional pushing, pulling, reaching, and overhead work activities (A.R. 138), as "consistent" with a residual functional capacity finding that Plaintiff is capable of performing the full range of "light" work.  (Joint Stip. at 10.)

In his March 25, 2002 report, Dr. Sophon diagnosed Plaintiff with cervical spine musculoligamentous sprain and strain and found that

12

Plaintiff was able to:  "lift 50 pounds occasionally and 25 pounds frequently"; "sit, stand, and walk for six hours out of an eight hour workday"; and "restricted to occasional pushing, pulling, reaching, and overhead work activities." (A.R. 138.)  In rendering his opinion, Dr. Sophon relied upon the information provided by Plaintiff, who he found to be a reliable historian, as well as his own physical examination, which indicated a limited range of motion in Plaintiff's neck but normal ranges of motion in the upper and lower extremities.  (A.R. 134-37.)

The ALJ improperly characterized Dr. Sophon's opinion, notwithstanding the non-exertional limitations Dr. Sophon found, as indicating Plaintiff's "ability to do essentially the full range of medium work."  *See* 20 C.F.R. §§ 404.1569a(c)(vi), 416.969a(c)(vi); Social Security Ruling 85-15, *2.  The ALJ's failure to address Dr. Sophon's non-exertional limitations, much less provide specific and legitimate reasons for rejecting them, constitutes error.

Further evidence regarding Plaintiff's non-exertional postural limitations is found in the April 8, 2002 Physical Residual Functional Capacity Assessment rendered by Dr. Stella, a state agency physician. In that assessment, he opined that Plaintiff: was limited to "light" work; was limited from climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling frequently; was precluded from reaching in all directions; and should avoid environments involving concentrated exposure to extreme cold and heat, vibrations, and

unprotected heights and moving machinery.[4]  (A.R. 141-44.)

In describing Dr. Stella's assessment as indicating that Plaintiff "had the ability to do essentially a full range of light work with mild manipulation and environmental limitations" (A.R. 21) and noting that it was "consistent" with his ultimate residual functional capacity finding, the ALJ mischaracterized Dr. Stella's findings, which plainly state that Plaintiff has non-exertional limitations (postural and environmental) that limit her ability to perform the full range of "light" work.  Furthermore, the non-exertional limitations assessed by Dr. Stella involving the upper extremities (*i.e.*, preclusions from reaching in all directions (A.R. 141-44)) -- are largely consistent with and provide additional support for the non-exertional limitations regarding Plaintiff's upper extremities found by Dr. Sophon (*i.e.*, preclusions on pushing, pulling, reaching, and overhead work activities) and by Dr. Doty (*i.e.*, "preclusions from prolonged upward and downward gaze and repetitive forceful gripping and grasping, bilaterally" (A.R. 182)).

In mischaracterizing these three assessments, the ALJ improperly misstated the evidence of record.  *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).

---

[4]    Dr. Stella indicated that he reviewed the consultative examiner's report limiting Plaintiff to "medium" work (Dr. Sophon's report), but "because of the pathology present in the [cervical] spine (documented in the file)," he found that she should be restricted to "light" work instead.  (A.R. 146.)   Dr. Stella's assessment was affirmed by Dr. James Haaland, another state agency physician.  (A.R. 147.)

14

1  Accordingly, the Court cannot determine whether the ALJ's residual

2  functional capacity finding, which includes no non-exertional

3  limitations, is supported by substantial evidence.[5]

4

5   Defendant maintains that the ALJ's finding that Plaintiff can

6  perform her past relevant work is based on substantial evidence, as

7  Plaintiff's description of her former employment did not include

8  activities requiring her to perform the only non-exertional limitations

9  that could apply in this case, *viz.*, Dr. Doty's limitations on prolonged

10 upward and downward gazing or repetitive, forceful bilateral gripping

11 activities.  (Joint Stip. at 13, citing A.R. 83-86 -- Plaintiff's work

12 history report listing her past jobs as an account executive and noting

13 her activities in those jobs as carrying a briefcase, samples, and

14 books.)  This argument is unavailing.  Because a proper assessment of

15 Plaintiff's residual functional capacity may need to include non-

16

17        [5]  Defendant contends that, assuming the ALJ should have found
18 any non-exertional limitations, only the non-exertional limitations in
   Dr. Doty's assessments should apply, because they are supported by
19 clinical findings and his opinion as a treating physician should be
   given greater weight than the opinions of Dr. Sophon and Dr. Stella.
20 (Joint Stip. at 13.)  While this may be correct, as noted above, the
   ALJ's failure to characterize accurately the evidence submitted by Dr.
21 Sophon and Dr. Stella and provide reasons in accordance with the
   applicable law for rejecting the non-exertional limitations found in
22 their opinions constitutes error.

23        The Court further notes that, while it is true that Dr. Doty's
   limitations are supported by the best clinical findings (*i.e.*, a
24 September 6, 2000 MRI), the reports of Dr. Sophon and Dr. Stella are
   also supported by some, albeit more limited, clinical findings. (*See,*
25 *e.g.*, A.R. 136 -- Dr. Sophon's report noting his examination of the
   limited range of motion in Plaintiff's neck; A.R. 146 -- Dr. Stella's
26 report explaining that it is based on both a review of Dr. Sophon's
   report and "documents in [the] file".)  Furthermore, to the extent that
27 the non-exertional limitations (with the exception of the environmental
   and lower extremity limitations found by Dr. Stella), all three doctors
28 found that Plaintiff had limitations involving her upper extremity
   (involving arm, hand, and neck movements).

1   exertional limitations, which necessarily will limit her ability to
2   perform the full range of "light" work, any finding that Plaintiff can
3   perform her past relevant work must be based upon the testimony of a
4   vocational expert. <u>Desrosiers</u>, 846 F.2d at 577 (where a claimant's non-
5   exertional limitations significantly limits the range of work permitted
6   by his exertional limitations, the ALJ must seek the testimony of a
7   vocational expert to determine what jobs a claimant can perform with
8   such limitations).   Neither the ALJ nor this Court can find that
9   Plaintiff can perform her past relevant work without such an evidentiary
10  foundation, if non-exertional limitations are present. *See* <u>Burkart v.</u>
11  <u>Bowen</u>, 856 F.2d 1335, 1341 (9th Cir. 1988)(ALJ could not assume role of
12  vocational expert in finding jobs that the claimant could perform after
13  finding that claimant could not perform the full range of sedentary and
14  light jobs).

15

16  **B.**   **<u>Remand Is Necessary</u>.**

17

18      In view of the ALJ's errors regarding Plaintiff's physical
19  limitations noted above, this action must be remanded. *See*; <u>Benecke v.</u>
20  <u>Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by
21  discounting treating physicians' opinions, remand for further
22  proceedings is appropriate if enhancement of the record would be
23  useful).
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 28, 2006

                                    /s/
                         MARGARET A. NAGLE
                         UNITED STATES MAGISTRATE JUDGE

17